**Frank AMANDEO, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CONAGRA FOODS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 30, 2011.
Decided Feb. 17, 2012.

Shelly Farber, Broomall, for petitioner.

Kelly A. Hemple, Philadelphia, for respondent Conagra Foods.

BEFORE: PELLEGRINI, Judge [1], and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

Petitioner, Frank Amandeo (Claimant), petitions for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed the decision of a workers' compensation judge (WCJ), denying Claimant's workers' compensation claim petition. We affirm.

Claimant began working for Conagra Foods (Employer) as a "utility worker" in 1983. Claimant remained in that position until Employer closed the plant in April 2007. Claimant filed his claim petition in March 2009, averring a work-related injury on or about December 1, 2006, that he alleges occurred when, during the course of lifting a heavy skid with a co-worker, the co-worker dropped his end of the skid. Claimant averred that he felt an immediate sharp pain in his lower back. More specifically, Claimant asserted that he "began missing work due to heavy lifting on the job which caused changes throughout [his] spine and which caused injury to both [his] shoulders such that [he] was in constant pain." (Claim Petition ¶ 1.) Claimant also asserted that the injury occurred be-

---

1. This case was assigned to the opinion writer prior to January 7, 2012, when Judge Pellegrini became President Judge.

cause of "repetitive carrying and lifting 'skids' weighing at minimum 50 pounds. Claimant would carry the skids in tandem with other co[-]workers at times. He suffered repetitive stress type injury and also was injured when a co[-]worker dropped a skid suddenly causing immediate stress upon [Claimant's joints (who was carrying the skid with the co[-]worker[.] )" (Claim Petition ¶ 4.) Employer denied the averments in the Claim Petition, and the Board assigned the matter to the WCJ.

The WCJ conducted hearings on the claim petition, during which he accepted the deposition testimony of Claimant's and Employer's medical experts. Claimant submitted his own deposition testimony and also testified in person before the WCJ. The WCJ determined that Claimant's testimony was not credible regarding the alleged December 2006 incident. The WCJ found the testimony of Employer's expert, Dennis P. McHugh, D.O., to be credible and found the testimony of Claimant's expert, Ronald E. Dworkin, D.O., not credible. The WCJ concluded that Claimant had failed to satisfy his burden to prove that he sustained a work-related injury on or as a result of the alleged incident in December 2006.

Claimant appealed that decision to the Board, challenging the WCJ's credibility determinations as being "unsubstantiated." The Board affirmed the WCJ's decision, concluding that Claimant's arguments related more to the weight of the evidence rather than to the question of whether substantial evidence supported the WCJ's factual findings. The Board did not specifically address Claimant's suggestion that his appeal sought to challenge the WCJ's factual findings on grounds other than substantial evidence.

 Claimant filed a petition for review with this Court. Claimant raises the following issues in his appeal:[2] (1) whether the WCJ's manner of rendering factual findings based on summation of testimony and without identification of objective factors in support of his credibility determinations fails to satisfy the reasoned-decision requirement of Section 422(a) of the Workers' Compensation Act (Act);[3] (2) whether the WCJ's factual findings concerning the occurrence of a work-related injury are not supported by substantial evidence and are inconsistent with the record as a whole; and (3) whether the WCJ erred as a matter of law in concluding that Claimant failed to provide competent and credible evidence to satisfy his burden of proof.[4]

2. Our standard of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. We acknowledge our Supreme Court's decision in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

4. An injured employee seeking to obtain workers' compensation benefits for a work-related injury bears the burden of proving all elements necessary to support an award. *Neidlinger v. Workers' Comp. Appeal Bd. (Quaker Alloy/CMI Int'l)*, 798 A.2d 334, 338 (Pa.Cmwlth.2002). Pursuant to Section 301(c)(1) of the Act, 77 P.S. § 411(1), an employee's injuries are compensable if they (1) arise in the course of employment and (2) are causally related thereto. *ICT Group v. Workers' Comp. Appeal Bd. (Churchray–Woytunick)*, 995 A.2d 927, 930 (Pa.Cmwlth.2010). Further, an employee must demonstrate that he is disabled as a consequence of the work-

Claimant first contends that the WCJ erred by failing to render a reasoned decision as required by Section 422(a) of the Act. Specifically, Claimant asserts here that the WCJ failed to offer adequate objective reasons for his credibility determinations regarding Claimant's testimony and the conflicting testimony of Claimant's and Employer's medical witnesses.

Section 422(a) of the Act requires a WCJ to issue a decision that permits an appellate court to exercise adequate appellate review. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 667, 916 A.2d 635 (2007). In order to satisfy this standard, a WCJ does not need to discuss every detail of the evidence in the record. *Id.* at 194 n. 4. Rather, Section 422(a) of the Act requires WCJs to issue reasoned decisions so that this Court does not have to "imagine" the reasons why a WCJ finds that the conflicting testimony of one witness was more credible than the testimony of another witness. *Id.* at 196.

Although our Supreme Court has held that a WCJ need not explain credibility determinations relating to a witness who testifies before the WCJ, Section 422(a) of the Act requires some explanation of credibility determinations by a WCJ with regard to conflicting deposition testimony in order to enable this Court to review a WCJ's decision. *Id.* Under Section 422(a) of the Act, a WCJ must articulate the objective rationale underlying his credibility determinations where the testimony of such witnesses is conflicting. *Id.* A WCJ may satisfy the reasoned decision requirement if he summarizes the witnesses' testimony "and adequately explains his credibility determinations." *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150, 1157 (Pa. Cmwlth.2007). Thus, while summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, where a WCJ summarizes testimony and also objectively explains his credibility determinations, the decision will satisfy the requirement. Further, other evidence in the record may provide the objective support necessary under Section 422(a) of the Act for adequate credibility determinations. For example, in *Gumm v. Workers' Comp. Appeal Bd. (J. Allan Steel)*, 942 A.2d 222 (Pa.Cmwlth.2008), the WCJ articulated an objective basis for his credibility determination where he "contrasted the severity of the injury described by [c]laimant's Physician with that described by [e]mployer's medical experts. He found the more severe description by [c]laimant's Physician more believable." *Id.* at 228–29. The WCJ in *Gumm* rejected the employer's expert's testimony regarding the claimant's ability to return to full-time work based on the expert's own recent examination of claimant during which claimant remained symptomatic.

We begin with Claimant's argument regarding his own testimony. As indicated above, Claimant testified both before the WCJ and by deposition. The WCJ provided the following credibility de-

---

related injury. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). The term "disability" is synonymous with an employee's loss of earning power. *Potere v. Workers' Comp. Appeal Bd. (Kemcorp)*, 21 A.3d 684, 690 (Pa.Cmwlth. 2011). An employee continues to bear the burden of proof with regard to the issue of disability throughout the proceedings. *Id.* Thus, Claimant bore the burden to establish not only that he was injured during the course of his employment and that the injury was causally related to his work, but he also had to demonstrate that his injury caused a loss of earning ability.

termination regarding Claimant's testimony:

This [WCJ] has considered the testimony of the Claimant together with all other evidence of record in this matter and finds the Claimant's testimony concerning the alleged work incident/injury of December 1, 2006 and the relationship between his repetitive heavy lifting at [Employer]'s company and his disability on and after December 1, 2006, not credible. In making the aforesaid credibility determination the following is noted:

The Claimant admitted that he never told any of his treating doctors including his family doctor, Dr. DiMonte or Dr. Dworkin that he had an injury at work in December of 2006 ... *This Judge had the opportunity to observe the demeanor of the Claimant at the December 8, 2009 Hearing and unfortunately must conclude that the Claimant was not a credible witness.*

(WCJ Decision at 4–5 (emphasis added).)

As Claimant notes, in *Lewis v. Workers' Compensation Appeal Board (Disposable Products)*, 853 A.2d 424 (Pa.Cmwlth.2004), this Court held that because the claimant in that case had provided both live and deposition testimony, "to the degree that [c]laimant's deposition testimony was relevant to the WCJ's credibility determinations relating to the medical evidence, the WCJ must provide an objective basis for his credibility determinations regarding Claimant's deposition testimony as well." *Id.* at 429 n. 11. Here, however, the substance of Claimant's testimony in both his deposition and his live testimony before the WCJ addressed similar topics. Thus, unlike a situation where a claimant testifies live concerning one aspect of his claim (which would provide a WCJ with the right to base credibility on that particular subject on a claimant's demeanor alone) and testifies by deposition with regard to another aspect of his claim (which would require the WCJ to provide objective reasons why he accepted or rejected the claimant's deposition testimony), here there is contextual overlap in Claimant's live and deposition testimony. In other words, it makes little sense to require a WCJ in such circumstances to offer objective reasons for a credibility determination if the witness also testified before a WCJ regarding the same subject of deposition testimony. If a claimant testifies before a WCJ regarding the symptoms of his alleged injury and the WCJ has the opportunity to assess credibility based on demeanor in that setting, then the WCJ should not be required to provide additional objective reasons for discrediting the same testimony that is given by deposition.

■ As our Supreme Court indicated in *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043 (2003), a WCJ's observation of a witness's demeanor alone is sufficient to satisfy the reasoned decision requirement. *Id.* at 77, 828 A.2d at 1052–53. Thus, the WCJ properly relied upon his own observations of Claimant's demeanor during his testimony before the WCJ in determining that Claimant's testimony was not credible.[5] Consequently, we conclude that the WCJ satisfied the requirements of Section 422(a) of the Act.

5. Moreover, none of the testimony submitted in this case, from Claimant or the medical experts, indicates that Claimant ever informed any of his physicians that his injury arose from an incident at work in December 2006. The WCJ essentially concluded that an objective basis existed to find Claimant's testimony incredible as to a December 2006 incident-Claimant's own admission that he never told his physicians that an incident at work caused his injury. Thus, even if the WCJ had not had the benefit of observing Claimant's demeanor, he provided an objective ground for his credibility determination.

We now address the WCJ's credibility determinations regarding the conflicting testimony of Claimant's and Employer's medical witnesses, Dr. Dworkin and Dr. McHugh, respectively. The WCJ provided the following reasons for rejecting the testimony of Claimant's expert:

a. Dr. Dworkin admitted that the Claimant did not tell him about the alleged work incident/injury of December 1, 2006.

b. Dr. Dworkin admits that he did not see the Claimant between June 2007 and June 2009.

c. The doctor admits that during his physical examinations of the Claimant he never documented a spasm.

d. The doctor admitted that he had no opinion concerning the relationship between the Claimant's work activities and the Claimant's shoulder problems.

e. The doctor failed to credibly explain to this Judge why he believed that the Claimant's work activities caused the Claimant's disability from his neck, back and shoulder maladies.

(WCJ Decision at 5–6, Finding of Fact number 8.)

As we observed above, under our holding in *Clear Channel Broadcasting*, a WCJ may render a reasoned decision on the basis of summarized testimony if the reason given in addition to the cited testimony constitutes an objective basis explaining why a WCJ did not find a witness credible.

Claimant asserts that the WCJ's explanations "are nothing more than unexplained summations of the record. Many are unclear or not found within the record, and the citations fail to provide the required objective basis to convincingly support his finding." (Claimant's Brief at 26.) In claiming that the WCJ's credibility determinations are not supported by objective reasons, Claimant refers to one of this Court's unreported decisions [6] for the proposition that the WCJ improperly based his credibility determinations with regard to the medical experts on "erroneous observations." The erroneous observation at issue in that case was the WCJ's misunderstanding of the expert's actual qualifications. Thus, the WCJ's reliance upon that misunderstanding for the purpose of rendering credibility determinations was improper. (*Benjamin*, slip op. at 7.) Further, the Court agreed in *Benjamin* with the claimant that the WCJ had failed to explain adequately one of the other allegedly objective bases upon which he rejected the testimony of the claimant's expert. In reaching that decision, the Court relied upon *Higgins v. Workers' Compensation Appeal Board (City of Philadelphia)*, 854 A.2d 1002 (Pa.Cmwlth. 2004), where we stated that the WCJ in that case failed to render a reasoned decision when her credibility determinations were based solely upon a reason that the record did not support. *Higgins*, 854 A.2d at 1006–1007.

The first reason the WCJ identified as grounds for rejecting Dr. Dworkin's testimony in this case was the fact that Claimant did not inform Dr. Dworkin of the alleged December 2006 injury. Essentially, then, this basis the WCJ identified relates to the fact reflected in evidence that Dr. Dworkin did not know that Claimant was injured in December 2006.

---

6. *Benjamin v. Workers' Comp. Appeal Bd. (City of Philadelphia)*, (Pa.Cmwlth., No. 1727 C.D. 2007, filed May 14, 2008). Pursuant to Section 414 of the Commonwealth Court's Internal Operating Procedures, "[p]arties may ... cite an unreported panel decision of this court, issued after January 15, 2008, for its persuasive value, but not as binding precedent."

Rather, Dr. Dworkin described his opinions with regard to Claimant's condition and then responded to a hypothetical describing Claimant's work responsibilities. That hypothetical did not include any reference to the alleged incident involving the dropping of a skid by Claimant's co-worker in December 2006. Dr. Dworkin did not testify regarding any specific injury Claimant suffered, notably the alleged December 2006 injury. Thus, although Dr. Dworkin's testimony could be regarded as competent (based upon the hypothetical) regarding a repetitive work injury,[7] the WCJ, observing that Dr. Dworkin did not understand the complete factual basis underlying Claimant's alleged injury, could rely upon that lack of understanding in forming his ultimate conclusion that Dr. Dworkin did not testify credibly.[8] As we stated in *Dorsey*, a reasoned decision permits an appellate court to review a WCJ's decision without imagining why the WCJ did not believe a witness. We conclude that the first reason the WCJ provided for rejecting Dr. Dworkin's testimony is sufficient, and we need not proceed to consider Claimant's challenges to the other grounds upon which the WCJ based his credibility determination.

Claimant also contends that the WCJ failed to provide an adequate objective basis to accept Dr. McHugh's testimony as credible. Specifically, Claimant comments that Dr. McHugh testified that he observed tightness in Claimant's lower back and that he acknowledged that Claimant might have symptomology at times other than during the course of his examination. Claimant contends that, because Dr. McHugh admitted that Claimant might be symptomatic some times, the WCJ was required to explain how he could conclude that Claimant sustained no work injury. Claimant argues that the WCJ did not give an objective basis for his credibility determination in referring to Dr. McHugh's review of Claimant's records, because the WCJ did not measure the opinions Dr. McHugh rendered against the records themselves.

■ With regard to Claimant's focus on Dr. McHugh's observation that Claimant might be symptomatic at times, we observe that such comments do not negate the objective criteria the WCJ identified as his reason for accepting Dr. McHugh's testimony. Dr. McHugh testified that he believed that Claimant's condition is related to age, and his comment regarding possible symptomology may simply reflect his belief that Claimant's age-related condition does not manifest itself continuously. We do not view this factor as undermining the objective bases the WCJ provided in deeming Dr. McHugh's testimony credible. As noted above, one of basis the WCJ cited for finding Dr. McHugh credible was Dr. McHugh's "expertise as a board certified orthopedic surgeon." There is no dispute regarding a basis in the record for this objective factor, and the WCJ could rely upon the objective ground of an expert's area of expertise as a basis for

7. A medical opinion may be competent if the witness is asked a hypothetical question based upon "matters in the record and facts warranted by the evidence." *Haddon Craftsmen, Inc. v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 440 (Pa.Cmwlth.2002), *appeal denied*, 573 Pa. 686, 823 A.2d 146 (2003).

8. We also note that the WCJ based his credibility determination in favor of Employer's witness on the fact that Dr. McHugh is an orthopedic surgeon, whereas Dr. Dworkin has certification in the areas of rehabilitation, pain, neuromuscular, electrodiagnostic, and interventional medicine. The negative presumption created by this distinction in qualifications is that the WCJ deemed a physician with expertise in orthopedic medicine more credible in this matter than a physician without such qualifications.

reaching a credibility determination. For the reasons expressed above, we reject Claimant's argument that the WCJ inadequately explained his credibility determination regarding Dr. McHugh.

■ Because we have concluded that the WCJ's decision is reasoned with regard to his credibility determinations, we now address Claimant's argument that the WCJ capriciously disregarded competent evidence that renders the WCJ's decision unreasoned under Section 422(a) of the Act. As stated above, "capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487. Capricious disregard, however, is found only where a WCJ deliberately and baselessly disregards evidence that is apparently trustworthy. *Williams v. Workers' Comp. Appeal Bd. (USX Corporation–Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth.2004). As noted above, however, the evidence that the WCJ rejected was Claimant's and Claimant's medical expert. As further noted above, the WCJ provided adequate reasons for rejecting the testimony of Dr. Dworkin, and was not required to provide an explanation for rejecting Claimant's testimony in this case.

■ Claimant argues, however, that the WCJ capriciously disregarded evidence based upon his assertion that aspects of Dr. McHugh's testimony reflect equivocation and a lack of understanding of Claimant's work duties such that his testimony, taken as a whole, was not competent. The question of whether expert medical testimony is unequivocal, and, thus, competent evidence to support factual determinations is a question of law subject to our review. *Somerset Welding & Steel v. Workmen's Comp. Appeal Bd. (Lee)*, 168 Pa.Cmwlth. 78, 650 A.2d 114, 117 (1994), *appeal denied*, 540 Pa. 652, 659 A.2d 990 (1995). In such cases, we review the testimony as a whole and may not base our analysis on a few words taken out of context. *Id.* "Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg College)*, 794 A.2d 443, 449 (Pa.Cmwlth. 2002). "[M]edical testimony is unequivocal if a medical expert testifies, after providing foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists." *O'Neill v. Workers' Comp. Appeal Bd. (News Corp., Ltd.)*, 29 A.3d 50, 58 (Pa.Cmwlth.2011). In this case, Dr. McHugh provided such testimony, and provided reasons why he believed Claimant's injuries were not work-related. On cross-examination, Dr. McHugh, in responding to hypothetical questions describing Claimant's work responsibilities, explained why he believed that Claimant's condition was related to age rather than work.

Dr. McHugh testified that he reviewed Claimant's medical records and tests/test reports, including MRIs and an EMG. With regard to his physical examination of Claimant on July 22, 2009, Dr. McHugh testified that (1) Claimant's complaints with motion and pain were subjective; (2) he could not find any objective evidence suggesting neurological problems; (3) Claimant had a good range of motion with regard to his lumbar area; (4) Claimant had diffuse subjective complaints "to palpitation;" (5) when he touched Claimant in certain areas of his low back, Claimant complained of pain, but the remaining portions of his examination were negative for objective findings; and (6) Claimant's identification of nerve-related pain indicated a "nonanatomic distribution of nerve [t]issues." (N.T. at 27–28.) Dr. McHugh ex-

plained that nerve symptoms follow the course of the nerve, and that Claimant's description of his nerve pain was inconsistent with actual impingement, and, rather, indicated a subjective response to Dr. McHugh's diagnostic question. (*Id.* at 28–29.)

With regard to the diagnosis Dr. Dworkin rendered regarding a repetitive stress injury, Dr. McHugh testified that his "medical opinion, within a reasonable degree of medical certainty, [was] that due to the lack of documentation by either of his physicians or by [Claimant]'s failure to fill out work-related documentation for a work injury, he did not believe Claimant suffered repetitive injuries or repetitive trauma that caused an injury to his lower back or his neck." (*Id.* at 31.) Thus, Dr. McHugh's opinion, in part, was based upon and reflected his understanding that Claimant had familiarity with the process of obtaining workers' compensation benefits (based upon Claimant's earlier period of receiving compensation benefits) and that Claimant failed to proceed with a workers' compensation claim when he alleged to have sustained a work injury in December 1, 2006. Although it would appear that such a factor should be relevant to the WCJ's analysis of *Claimant's* credibility, and that the Claimant's failure to report a work injury to a physician or to file a workers' compensation claim should not bear on a medical expert's opinion as to whether an alleged incident caused an injury, there is ample competent and unequivocal testimony (described above) that supports Dr. McHugh's ultimate opinion that Claimant did not sustain an injury.

With regard to records indicating that Claimant had complained of back issues before October 2006, Dr. McHugh testified as follows:

Q. If you don't believe that he sustained a work-related injury, what do you believe the basis for his complaints are?

A. With Mr. Amandeo, again, he is hitting the age group where the natural degenerative process of aches and pains, arthritis, degenerative problems take effect. In my practice, I see numerous in his age group that come in; housewives, people who work as bus drivers who have the same exact issues. It's part of the aging process.

(*Id.* at 38–39.) On cross-examination, Dr. McHugh denied that he would not see the changes in Claimant's MRIs in a person who had a sedentary job or was not an athlete. (*Id.* at 49.) In response to a question from Claimant's counsel, Dr. McHugh testified that "degenerative findings in somebody in their late 40's can be found in a person who has a sedentary job, but played baseball, basketball, runs, jogs, sits on a lawn mower that he drives four hours every week. The basic answer I could give you is it could be life. It's a degenerative process." (*Id.* at 64–66.)

Based upon Dr. McHugh's testimony as a whole, we disagree with Claimant's contention that this testimony was vague, inconsistent, or based upon a lack of understanding or misunderstanding of the underlying medical facts. Dr. McHugh, as indicated above, testified credibly that he found no objective basis for Claimant's complaints. Consequently, we also disagree with Claimant's argument that the WCJ capriciously disregarded evidence. In this case, the WCJ issued factual findings supported by substantial evidence and based those findings upon credibility determinations supported by objective reasons. Those findings, in turn, support the WCJ's conclusion that Claimant failed to satisfy his burden of proof. This is not the "rare" situation where this Court will disturb such a decision. *Winter-*

*myer*, 571 Pa. at 204 n. 14, 812 A.2d at 487.

As indicated above, Claimant bore the burden of proof on all aspects of his claim petition. *See* n. 3 above. Based upon the foregoing evaluation of the evidence and the WCJ's credibility determinations, we conclude that substantial evidence supports the WCJ's factual findings, and that the WCJ rendered a reasoned decision in accordance with the Act. Accordingly, we will affirm the Board's order.

## *ORDER*

AND NOW, this 17th day of February, 2012, the order of the Workers' Compensation Appeal Board is AFFIRMED.